Filed 7/3/24  P. v. Seidel CA4/2
*See Concurring Opinion*

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E080232 |
| v. | (Super.Ct.No. VCR6694) |
| DAVID BARTLETT SEIDEL, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  John P. Vander Feer, Judge.  Affirmed.

Cliff Gardner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina, Supervising Deputy Attorney General, A. Natasha Cortina, Lynne G. McGinnis and Alan L. Amann, Deputy Attorneys General, for Plaintiff and Respondent.

1

In 1991, defendant and appellant David Bartlett Seidel, who was 16 years old at the time, robbed a pawn shop and killed the owner and a customer. In 1994, a jury convicted him of the murders (prosecuted solely on the theory of first degree felony murder), robbery, and burglary. (Pen. Code,[1] §§ 187, 211, & 459.) In addition, the jury found true special circumstance allegations that the murders occurred during the commission of a burglary, robbery, and by means of lying in wait. (§ 190.2, subd. (a)(3), (15), & (17).) The jury also found true the personal gun use enhancement allegation. (§ 12022.5, subd. (a).) Defendant was sentenced to state prison for a determinate term of 20 years, to be followed by two life terms without the possibility of parole. We affirmed the judgment but ordered the 10-year sentence imposed on the robbery conviction and related gun-use enhancement stayed.[2] (*People v. Seidel* (July 23, 1996, E015487) [nonpub. opn.].)

On July 18, 2022, defendant filed a petition for resentencing pursuant to section 1172.6 (former § 1170.95[3]). The superior court denied his petition, concluding the lying-in-wait special-circumstance findings rendered him ineligible as a matter of law. On appeal, defendant contends the court erred because: (1) the jury's lying-in-wait findings

---

[1] All undesignated section references are to the Penal Code.

[2] On January 27, 2023, we took judicial notice of the record of defendant's prior appeal in case No. E015487 and deemed our prior unpublished opinion to be part of the record in this case.

[3] Effective June 30, 2022, Assembly Bill No. 200 (2021-2022 Reg. Sess.) amended and renumbered Penal Code section 1170.95 as section 1172.6. (Stats. 2022, ch. 58, § 10.) The current section numbering will be used throughout this opinion.

do not necessarily reflect a finding that he was the actual killer;[4] (2) the jury was not properly instructed on premeditation and deliberation; and (3) the jury was not required to find, nor did it find, that he aided and abetted the actual killer. We affirm.

## I. PROCEDURAL BACKGROUND AND FACTS

### A. *The Offenses.*

Harvey Wolcott operated the Hesperia Pawn Shop that sold firearms, gold, and jewelry. On the morning of November 26, 1991, he and Donald Howie, a customer, were shot and killed during a robbery at the shop; more than 20 firearms were taken. In May 1992, one of the stolen firearms (used in an unrelated shooting) was traced back to defendant. Police questioned defendant who offered different versions about his role in the robbery/murder, including an admission that he acted alone.

### B. *The Trial.*

On November 6, 1992, the San Bernardino County District Attorney charged defendant with two counts of murder (§ 187), robbery (§ 211), and burglary (§ 459). All four counts alleged he personally used a firearm. (§ 12022.5, subd. (a).) The murder counts alleged four special circumstances: (1) the murder occurred during the commission of a robbery (§ 190.2, subd. (a)(17)); (2) the murder occurred during the commission of a burglary (§ 190.2, subd. (a)(17)); (3) defendant committed the murder

---

[4] Respondent concedes the superior court incorrectly concluded the lying-in-wait special circumstance established the jury found defendant was the actual killer as a matter of law.

while lying in wait (§ 190.2, subd. (a)(15)); and (4) defendant committed multiple murders (§ 190.2, subd. (a)(3)).

Trial began in April 1994. Defendant denied shooting either victim; however, he admitted robbing the pawn shop. He testified that before the robbery, he had taken two of his father's guns to a party to impress his friends and gave them to David Gilbert and another individual, both of whom refused to give them back. Defendant explained that Gilbert said defendant "would have to come up with another gun in order to trade to get it back." When his father looked for his guns, defendant came up with the idea of robbing the pawn shop because he "had no other way to get any guns." He did not want to go to the police because he would have to tell his father (a sheriff's deputy) that he took the guns, and he feared this news would cause a greater strain on their relationship.

Defendant admitted to lying to police officers during his interviews. Nonetheless, he testified that he went to the pawn shop (wearing his letterman's jacket with his name on the back[5]) with four other males, he brought a gun and bullets, and Gilbert committed the murders. Defendant maintained that he went to the shop with the intent to rob, but not the intent to kill. He insisted he was not the shooter, but when asked why he brought a gun, he answered, "When you're going to do a robbery, you need to take a gun."

Gilbert denied any involvement in the robbery but admitted to receiving a gun from defendant without paying for it. Evidence from Gilbert's employer showed that he

---

[5] When Wolcott, a retired sheriff's deputy, opened the pawn shop, defendant's father helped build racks at the business. In the past, defendant had accompanied his father to the pawn shop more than one time; defendant knew Wolcott might recognize him.

4

worked a full day from 6:00 a.m. to 4:56 p.m. on November 26, 1991, the day of the robbery.

Joshua Allen, defendant's best friend, testified that defendant admitted to shooting the pawn shop owner and another guy, and showed Allen the guns taken from the shop. Allen also confirmed that defendant modified (making it a silenced weapon) the murder weapon (.22 rifle with the barrel sawed off, the stock cut off, and holes drilled in it) in or about October 1991.

*C. Closing Argument, Jury Instructions, and Verdicts.*

The prosecutor discussed defendant's various stories about who was involved in the robbery/murders but argued defendant "always came back to the final story on May 27th, 1992; that is, his story that he acted alone. He planned to rob Harvey Wolcott, that it was [defendant] who shot [Wolcott] and it was [defendant] who shot Donald Howie." Nonetheless, the prosecutor tried the case solely on a felony-murder theory that allowed the jury to convict defendant of first degree murder without finding malice or deciding whether he was the actual killer or an aider and abettor.

Defense counsel conceded that defendant was guilty of robbery and both murders under the felony-murder rule but emphasized that the case "is about the special circumstances and the serious nature in finding them" and defendant was not the actual killer. Defense counsel maintained that Gilbert, not defendant, was the actual killer, and asked the jurors to find the special circumstances not true. He argued, "Each one of those special circumstances has to be looked at with proof beyond a reasonable doubt as to

5

whether [defendant] is the actual killer. If he wasn't, did he have any intent to kill? Did he act with reckless indifference and was he a major participant? Those are the legal issues." After pointing out defendant's inconsistent versions of who committed the murders, along with the evidence that implies he did not act alone, counsel urged the jury to "[c]onsider these inconsistencies when you look at the facts of who was the actual killer. [¶] Was there any intent to kill? Reckless indifference? Major participant? [¶] And what the prosecution would like you to do on these things is take every fact that supports that [defendant] did this all by himself, he did the shooting all by himself, and ignore everything else. Only believe he's lying when it doesn't fit the theory of the case, no matter how many inconsistencies there are with the physical facts. [¶] What I'm asking of you is for you to take that evidence, evaluate it, weigh it against the law of reasonable doubt. If you have a doubt as to whether these special [circumstances are true, I]'m requesting on behalf of [defendant] that you find all of them not true."

In his rebuttal, the prosecutor asserted the defense failed to explain any reason for the jurors to "not conclude that [defendant] is guilty of the special circumstances . . . as they are charged." He argued the evidence shows defendant was a major participant because he planned the robbery, chose the date, brought the rifle, and lured the shop owner into a position where "somebody else can get the drop on him." He added that defendant was indifferent and reckless because he brought "a whole bunch of extra bullets," made a silencer for the rifle, and previously test-fired the rifle. As to the lying-in-wait special circumstance, the prosecutor argued it "requires that he be the killer, that

6

he have the intent to kill, and it requires that he do it in a manner that I can only say uses a form of betrayal; where he comes in, intentionally takes advantage of the relationship between the victim, Mr. Wolcott, and [defendant's] father and uses that as an advantage to get the drop on Mr. Wolcott and then kill him unsuspectingly."

The jury was instructed on the felony-murder theory only. However, under pattern instruction former CALJIC No. 8.80.1, the jurors were directed that, if they found defendant guilty of first degree murder, they must then determine if the special circumstance is true—i.e., that the murder was committed while lying in wait. Specifically, the jurors were instructed with former CALJIC No. 8.80.1, which required a finding that defendant is either the actual killer or "*with the intent to kill aided, abetted*, counseled, commanded, induced, solicited, requested, or assisted *any actor in the commission of the murder in the first degree*, or with reckless indifference to human life and as a major participant, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted in the commission of the crime of robbery or burglary which resulted in the death of a human being, namely Harvey Wolcott and/or Donald Howie."**6**

_____

**6** Former CALJIC No. 8.80.1, in relevant part, provided: "The People have the burden of proving the truth of a special circumstance. If you have a reasonable doubt as to whether a special circumstance is true, you must find it to be not true. [¶] *Unless an intent to kill is an element of a special circumstance*, such as the special circumstance of lying-in-wait, if you are satisfied beyond a reasonable doubt that the defendant actually killed a human being, you need not find that the defendant intended to kill in order to find the special circumstance to be true. [¶] If you find that a defendant was not the actual killer of a human being, or *if you are unable to decide whether the defendant was the actual killer or an aider or abettor*, you cannot find the special circumstance to be true unless you are satisfied beyond a reasonable doubt that such *defendant with the intent to kill aided, abetted,* counseled, commanded, induced, solicited, requested, *or assisted any*

*[footnote continued on next page]*

7

(Former CALJIC No. 8.80.1, italics added.)  Pursuant to former CALJIC No. 8.81.15, the jurors could find defendant guilty of intentional killing by lying in wait only if they found he had acted with the intent to kill the victims.

The jury deliberated over the course of five days.  During deliberations, they submitted questions/notes to the trial court.  As defendant observes, the jurors were struggling with the issue of whether he acted alone or aided and abetted Gilbert.[7]  Specifically, the jury requested clarification on the words "personally used," and later indicated they had decided all counts except the lying-in-wait special circumstance.[8]  As to that special circumstance, the jury informed the court that they were deadlocked at 11 to 1.  The jurors were polled as to whether there was a "reasonable possibility of any further movement on that special circumstance."  Since the deadlock was 11 to 1, and

_actor in the commission of the murder in the first degree,_ or with reckless indifference to human life and as a major participant, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted in the commission of the crime of robbery or burglary which resulted in the death of a human being, namely Harvey Wolcott and/or Donald Howie.  [¶] . . . [¶]  In order to find a special circumstance alleged in this case to be true or untrue, you must agree unanimously."  (Former CALJIC No. 8.80.1, italics added.)

[7]  Jurors asked for the crime scene log, which identified the placards and their locations, defense counsel's opening and closing statements, Josh Allen's testimony, the murder weapon, and the pistol that was placed/left behind at the home of Randy Steen (Josh Allen's mother's boyfriend and the individual defendant initially identified as the killer).

[8]  Specifically, their note stated, "We understand the terms 'used a firearm' and 'firearm'—However—would he have personally used it?  In his own hands?  Help us out here with this part of the definition.  Some are in question."  The jury asked, "What is the difference between an allegation and a special circumstance?  Should we concern ourselves with this?"  On the same day, they stated, "We have decided on all counts except special circ 1, 4 'Lying in wait.'  We cannot come to a unanimous decision.  Any suggestions?"

8

some jurors believed additional time and a review of the jury instructions may help break it, the court stated, "[R]ather than declare a mistrial at this time on that special circumstance, the court is inclined to send you out again." The court indicated it would reread CALJIC No. 8.81.5 and the jury foreperson asked for a reread of the instruction on direct and circumstantial evidence. Following further discussion on the instructions to be reread, defense counsel objected to "separating these instructions out" for rereading when all the instructions are in the jury room.

The following instructions were reread: CALJIC No. 2.90, Presumption of Innocence—Reasonable Doubt—Burden of Proof; CALJIC No. 8.80.1, Special Circumstances—Introductory; CALJIC No. 8.81.15, Special Circumstances—Murder While Lying In Wait; CALJIC No. 8.83, Special Circumstances—Sufficiency of Circumstantial Evidence—Generally; CALJIC No. 8.83.1, Special Circumstance— Sufficiency of Circumstantial Evidence to Prove Required Mental State; and CALJIC No. 17.40, Individual Opinion Required—Duty to Deliberate. After a few hours of deliberation, the jury submitted three more notes that informed the trial court as follows: "We are trying hard to clear many details here—We might be able to come to some conclusion if we listen to a few testimony read backs . . . [defendant's] X examine (people) portion of his testimony"; "Josh Allen testimony early on regarding 'when gun was altered or modified' (time period before the Murder Robbery)"; and "Bill Breniff testimony regarding whereabouts of David Gilbert on day of Murder/Robbery.

(Questioned by [the prosecutor.])"  The next day, the jurors found the lying-in-wait special circumstance true and informed the court they had reached their verdicts.

On June 3, 1994, the jury convicted defendant of all charges with true findings on all special circumstances.

*D.  Defendant's Petition for Resentencing.*

On July 18, 2022, defendant filed a petition for resentencing under section 1172.6 alleging he was convicted of murder under either the natural and probable consequences doctrine or the felony-murder doctrine and could no longer be convicted of murder because of the changes to the law effected under Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Sen. Bill 1437).  In his declaration, he stated that he is entitled to relief because the court records "reflect that [he] was never convicted as a major participant in the murder of both victims in this case, but only as an aider and abettor to the crimes he is now convicted of."  The superior court summarily denied the petition on the grounds (1) defendant admitted that "'he alone committed the robbery and shot and killed both men,' during a *Miranda* [*v. Arizona* (1966) 384 U.S. 436] interview"; (2) the jury was instructed on felony murder and lying in wait; (3) the jury's true finding on lying in wait "shows premeditation and deliberation"; and (4) the true finding that "defendant intentionally killed the victim[s] while laying in wait" makes him the actual killer.

## II.  DISCUSSION

Defendant contends the superior court erred in denying his petition based on the special circumstance findings without holding an evidentiary hearing.  We disagree.

10

*A. Applicable Law.*

Section 189, as amended, limits liability under a felony-murder theory principally to "actual killer[s]" and those who, "with the intent to kill," aid, abet, counsel, command, induce, solicit, request, or assist "the actual killer in the commission of murder in the first degree." (§ 189, subd. (e)(1), (2).) "Defendants who were neither actual killers nor acted with the intent to kill can be held liable for murder only if they were 'major participant[s] in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of [Penal Code] Section 190.2'—that is, the statute defining the felony-murder special circumstance." (*People v. Strong* (2022) 13 Cal.5th 698, 708; see § 189, subd. (e)(3).)

"A person convicted of felony murder . . . or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . may file a petition with the court that sentenced the petitioner to have the petitioner's murder . . . conviction vacated and to be resentenced." (§ 1172.6, subd. (a).) The petition must allege the petitioner was (1) charged with one of the enumerated crimes under a theory of felony murder or other theory under which malice is imputed to a person based solely on that person's participation in a crime; (2) convicted of murder, attempted murder, or manslaughter; and (3) could not presently be convicted of murder because of changes to sections 188 or 189 (Stats. 2018, ch. 1015, §§ 2, 3) made effective January 1, 2019. (§ 1172.6, subd. (a)(1), (2), (3).)

Where the petition complies with the three requirements, the superior court proceeds to section 1172.6, subdivision (c), to assess whether the petitioner has made "a prima facie showing" for relief. (*People v. Lewis* (2021) 11 Cal.5th 952, 960.) "[T]he prima facie inquiry . . . is limited. . . . '"[T]he court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause."' [Citation.] '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'" (*Id.* at p. 971.) At the prima facie hearing, the court may consider the record of conviction.[9] (*Ibid.*) "If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the [superior] court may dismiss the petition." (*People v. Strong*, *supra*, 13 Cal.5th at p. 708.)

---

[9] The record of conviction includes jury verdicts, jury instructions, and closing arguments. (*People v. Harden* (2022) 81 Cal.App.5th 45, 54-56 [considering jury instructions and verdicts to determine whether defendant made prima facie showing of eligibility]; *People v. Ervin* (2021) 72 Cal.App.5th 90, 106 (*Ervin*) [considering sentencing enhancements, jury instructions, closing arguments, and verdicts at prima facie stage].) This does not include our appellate opinion. "[T]he factual summary in an appellate opinion is not evidence that may be considered at an evidentiary hearing to determine a petitioner's eligibility for resentencing. [Citation.] If such evidence may not be considered at an evidentiary hearing to determine a petitioner's ultimate eligibility for resentencing, we fail to see how such evidence could establish, as a matter of law, a petitioner's ineligibility for resentencing at the prima facie stage." (*People v. Flores* (2022) 76 Cal.App.5th 974, 988, fn. omitted; see *People v. Clements* (2022) 75 Cal.App.5th 276, 292 ["[T]rial judges should not rely on the factual summaries contained in prior appellate decisions when a section [1172.6] petition reaches the stage of a full-fledged evidentiary hearing."].)

In this case, the superior court denied defendant's petition at the prima facie stage under section 1172.6, subdivision (c).  A denial at this stage is appropriate only if the record of conviction demonstrates that the petitioner is ineligible for relief as a matter of law.  (*People v. Lewis*, *supra*, 11 Cal.5th at p. 960.)  This is a purely legal conclusion, which we review de novo.  (*Id*. at p. 961; *People v. Harden*, *supra*, 81 Cal.App.5th at p. 52.)

### B.  Analysis.

Defendant contends that since the lying-in-wait instruction applies to both actual killers and aiders and abettors, and the jurors never received proper instructions on premeditation and deliberation, their true finding is not equivalent to premeditated and deliberate murder.  He further contends he is eligible for resentencing because the law at the time of his trial allowed the jury to find him "guilty as an aider and abettor without a finding that he aided the actual killer (as required by current law)."  As we explain, we reject his contentions.

### 1.  Premeditation and deliberation.

The information charged defendant with murder, alleged that he personally used a firearm (sawed-off .22 rifle), and alleged he "intentionally killed the victim[s] while lying in wait," within the meaning of section 190.2, subdivision (a)(15).  The jury was instructed that special circumstance lying in wait requires a finding the defendant intended to kill and committed the murder while lying in wait.  The term "'while lying in wait'" was defined as "waiting and watching for an opportune time to act, together with a

13

concealment by ambush or some other secret design to take the other person by surprise [even though the victim is aware of the murderer's presence]. The lying in wait need not continue for any particular period of time provided that its duration is such as to show a state of mind equivalent to premeditation or deliberation." According to the record, the instruction that provided the definitions of premeditation and deliberation was withdrawn.[10]

Since the jurors never received proper definitions of premeditation and deliberation, defendant contends the superior court erred in concluding "the lying-in-wait findings necessarily reflected a conclusion that [defendant] killed with premeditation and deliberation." We disagree. Although the jurors were not instructed on the definitions of premeditation or deliberation, they were instructed on the term "while lying in wait." This instruction made clear that the jurors could not find the special circumstance true unless they were convinced defendant determined to kill the victims after careful consideration, specifically, after "waiting and watching for an opportune time to act" while simultaneously hiding his intent from them.

Moreover, courts have consistently held that a true finding on the special circumstance allegation—proof of lying in wait—reflects a conclusion defendant killed with premeditation and deliberation. (*People v. Brown* (2023) 14 Cal.5th 453, 464 [murder by lying in wait is one kind of "'willful, deliberate, and premeditated killing' that

---

**10** "[The word 'premeditation' means considered beforehand.] [¶] [The word 'deliberation' means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action.]"

14

section 189 has listed as categorically 'murder of the first degree'"]; *People v. Hardy* (1992) 2 Cal.4th 86, 162 [lying-in-wait jury instruction not deficient for failing to require independent proof of premeditation and deliberation]; *People v. Sanchez* (1864) 24 Cal. 17, 29 [in contexts of poison, lying in wait, and torture, the means used provide "conclusive evidence of premeditation"].)  Lying in wait ""'"[is] the functional equivalent of proof of premeditation, deliberation, and intent to kill." [Citation.]  Thus, a showing of lying in wait obviates the necessity of separately proving premeditation and deliberation . . . .' [citation] or intent to kill [citation]." (*People v. Wright* (2015) 242 Cal.App.4th 1461, 1496.)  If a showing of lying in wait obviates the necessity of separately proving premeditation and deliberation, it also obviates the necessity of defining these terms.

*2.  Aiding and Abetting*

Defendant raises the question of his culpability for felony murder.  He claims the jury was not required to find, nor did it find, that he aided and abetted the actual killer. He asserts that at the time the offenses (1991) and his trial took place (1994), section 190.2, subdivision (b), extended liability for first degree murder to anyone who aided and abetted "*any actor* in the commission of murder in the first degree."  (§ 190.2, former subd. (b); Stats. 1989, ch. 1165, § 16, effective June 6, 1990.)  Conversely, under current law, liability for a participant (not the actual killer) in the perpetration of a murder extends only to those who, with the intent to kill, aided and abetted "*the actual killer* in the commission of murder in the first degree."  (§ 189, subd. (e)(2), italics added.)  Thus, he argues that since a jury today must find that he assisted the "actual killer" rather than

15

simply "any actor," the "lying-in-wait finding simply does not reflect a finding on the *actus reus requirement* now required for conviction of murder." (See *Ervin*, *supra*, 72 Cal.App.5th 90.) We disagree.

"A primary purpose of Senate Bill 1437 was to align a person's culpability for murder with his or her mens rea. [Citation.] To effectuate that purpose, Senate Bill 1437 amended . . . section 188 to state that '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.'" (*People v. Roldan* (2020) 56 Cal.App.5th 997, 1002-1003.) Section 189, in relevant part, provides that "[a]ll murder . . . that is committed in the perpetration of, or attempt to perpetrate, . . . robbery[ or] burglary . . . is murder of the first degree." (§ 189, subd. (a).) Under the old felony-murder doctrine, a defendant was liable for first degree murder if his or her accomplice killed someone while the defendant participated in the commission or attempted commission of a qualifying felony. The required mental state was simply the intent to commit a qualifying felony; malice was imputed to the defendant based on his or her willingness to commit a felony our Legislature deemed ""inherently dangerous to human life."" (*People v. Lopez* (2023) 88 Cal.App.5th 566, 574 (*Lopez*), review den. May 31, 2023, S279347.) However, now, under section 189, felony-murder liability is imposed when "(1) [t]he person was the actual killer[;] [¶] (2) *[t]he person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree*[; or] [¶] (3) [t]he person was a major participant in the underlying felony and acted with

16

reckless indifference to human life, as described in subdivision (d) of [s]ection 190.2." (§ 189, subd. (e), italics added.) Our focus is on the language in the second category of persons.

Acknowledging the two components of felony murder—the mens rea (intent) and the actus reus (the act), defendant's challenge focuses on the actus reus. He asserts his record of conviction fails to establish that the jurors found, let alone were asked to find, that he aided the actual killer. He notes that the *Ervin* court "has reached precisely this result." According to *Ervin*, a finding of an act that aided the underlying felony (robbery, burglary, etc.) is insufficient to deny a section 1172.6 petition at the prima facie stage because section 189, subdivision (e)(2), now requires the "jury to find a defendant aided and abetted '*the actual killer* in the commission of murder in the first degree.'" (*Ervin*, *supra*, 72 Cal.App.5th at pp. 94-95, 106-108.) However, two cases from this district have concluded otherwise: *Lopez*, *supra*, 88 Cal.App.5th 566, and *People v. Morris* (2024) 100 Cal.App.5th 1016 (*Morris*).[11] We find their analyses more persuasive.

As we stated in *Lopez*, the actus reus required by section 189, subdivision (e)(2), is an act that assists in the commission of the underlying felony or attempted felony that results in death, not the killing itself. (*Lopez*, *supra*, 88 Cal.App.5th at pp. 577-578; see *People v. Dickey* (2005) 35 Cal.4th 884, 900-901 [language used in felony-murder special circumstance (§ 190.2, subd. (c), formerly § 190.2, subd. (b)) does not require proof the defendant assisted in the killing themselves].) We relied on *Dickey* but further

---

[11] The dissenting opinions in *Lopez* and *Morris*, agree with defendant's analysis.

explained:  (1)  Section 189, subdivision (a), defines murder in the first degree as murder committed in the perpetration or attempted perpetration of a qualifying felony, so assisting in a qualifying felony in which death occurs is the same as assisting the actual killer in committing first degree murder.  (*Lopez*, at p. 578)  (2)  The purpose of Senate Bill 1437 was to stop imputing malice to a defendant to justify a murder conviction, but a defendant who commits a qualifying felony while harboring express malice (see § 188, subd. (a)(3)) does not need that protection, so "there is no reason to interpret the actus reus requirement as anything different than what the felony-murder actus reus requirement was before Senate Bill 1437."  (*Lopez*, at p. 578)  (3)  To confine section 189, subdivision (e)(2), felony-murder liability to aiders and abettors who aided, abetted, or assisted in the killing itself makes it "easier" to obtain a murder conviction for defendants who harbor the less culpable state of mind of "reckless indifference to human life than for those who acted with express malice," since the prosecution would only have to prove "they played a major role in the felony to be guilty of first degree murder under section 189."  (*Lopez*, at p. 579)

As the People point out in the respondent's brief, to require an aider and abettor to have aided the actual killer in the first degree murder, as opposed to aiding the commission of the underlying felony, would "largely read section 189, subdivision (e)(2) out of the law by rendering it superfluous to other murder statutes.  If section 189, subdivision (e)(2) requires aiding and abetting the killing itself with the intent to kill, then guilt under that subdivision necessarily equates to guilt as a direct aider and abettor.  (See

18

*People v. Prettyman* (1996) 14 Cal.4th 248, 259 [defining direct aider and abettor liability].)  It would also equate to guilt of felony murder as a major participant acting with reckless indifference to human life (§ 189, subd. (e)(3)).  An intent to kill subsumes the lesser mens rea of reckless indifference, and one who directly aids and abets a killing committed in the course of a felony necessarily is a major participant to it.  (See [*People v. Clark* (2016)] 63 Cal.4th [522,] 611 ['The ultimate question pertaining to being a major participant is "whether the defendant's participation in 'criminal activities known to carry a grave risk of death' [citation] was sufficiently significant to be considered 'major' [citations]"'], quoting *People v. Banks* (2015) 61 Cal.4th 788, 794.)  This superfluous interpretation of section 189, subdivision (e)(2) should be avoided.  (*People v. Arias* (2008) 45 Cal.4th 169, 180 [courts obligated to avoid statutory interpretation that renders provision superfluous].)"

As stated in *Morris*, the phrase "aiding 'the actual killer in the commission of murder in the first degree . . . is a legal term of art which, contrary to defendant's assertion, is not limited to assisting the killing itself.  Although 'murder in the first degree' may still be committed by an actual killer through a willful, deliberate and premeditated act, that is not the only way.  Someone who personally commits what turns out to be the homicidal act while acting in furtherance of the common design of an enumerated felony, would also be guilty of first degree murder as an actual killer under the amended statutes.  [Citations.]  With such an act occurring in furtherance of the underlying common design, all others who are engaged in the commission of the

19

felony—i.e., acting in furtherance of the common design—would necessarily be aiding the killer in the commission of murder in the first degree. Thus, the actus reus required for those possessing an intent to kill is simply aiding the underlying felony in which a qualifying death occurs." (*Morris*, *supra*, 100 Cal.App.5th at pp. 1025-1026.)

Notwithstanding the above, defendant argues that when there are only two defendants, the "variance from the terms of amended section 189, subdivision (e)(2)" would not matter, since the accomplice by definition would have aided the actual killer. But it "is especially important in cases like this one" because defendant testified there were three other people involved in the robbery, and the jury instructions did not require jurors to decide whether he had aided the "actual killer." This interpretation of the use of the term "actual killer" defies common sense because it capitalizes on some words over others in determining who will be culpable of felony murder. Section 189, subdivision (e)(2) extends liability to a defendant, who was not the actual killer, "but, with the intent to kill, *aided, abetted, counseled, commanded, induced, solicited, requested, or assisted* the actual killer in the commission of murder in the first degree." Thus, a defendant, who possesses the intent to kill, need not engage in a more significant act vis-à-vis the killing; rather the act, however slight, need only have "counseled, commanded, induced, solicited, requested, or assisted" the actual killer. As we explained in *Lopez*, because "[s]ection 189, subdivision (a) defines 'murder in the first degree' as any murder that is 'committed in the perpetration of, or attempt to perpetrate [a qualifying felony],'" under the terms of the statute, "assisting a qualifying felony in which a death occurs is the same

20

as assisting the actual killer in committing first degree murder, and vice versa." (*Lopez*, *supra*, 88 Cal.App.5th at p. 578.) Thus, regardless of the number of people who commit the qualifying felony, each participant in the crime necessarily aids the others, the actual killer included.

In short, we conclude that the purpose of Senate Bill 1437 was not to change the actus reus necessary to commit felony murder as an aider and abettor acting with the intent to kill. Rather, its purpose "was to align a person's culpability for murder with his or her mens rea. [Citation.] To effectuate that purpose, Senate Bill 1437 amended . . . section 188 to state that '[m]alice shall not be imputed to a person based solely on his or her participation in a crime.'" (*People v. Roldan*, *supra*, 56 Cal.App.5th at pp. 1002-1003.)

Here, defendant is ineligible for relief as a matter of law. To be eligible for resentencing, defendant was required to show that he "could not presently be convicted of murder . . . because of changes to Section 188 or 189" made by Senate Bill 1437. (§ 1172.6, subd. (a)(3).) Even if defendant had asserted in his petition that he was not the actual killer or a direct aider and abettor of the actual killer—he did not—the jury instructions given at his trial conclusively demonstrate he cannot make the required showing. As instructed, defendant's jurors could find him guilty of the special circumstance lying in wait pursuant to section 190.2, subdivision (a)(15), only if they found he had acted with the intent to kill—either as the actual killer of Wolcott and Howie or, pursuant to section 190.2, subdivision (c), as a person "who, with the intent to

21

kill, aids, abets, counsels, commands, induces, solicits, requests, or assists any actor in the commission of murder in the first degree." As such, the record of conviction conclusively established that defendant's petition was meritless.

### III.  DISPOSITION

The postjudgment order denying defendant's petition for resentencing under section 1172.6 is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER          

J.

I concur:

RAMIREZ         

P. J.

22

[*People v. David Bartlett Seidel*, E080232]

MENETREZ, J., Concurring.

In 1994, a jury convicted David Bartlett Seidel on two counts of murder and returned true findings on special circumstance allegations of lying in wait, robbery-murder, burglary-murder, and multiple murder.  (Pen. Code, §§ 187, 190.2, subd. (a)(3), (a)(15), (a)(17); undesignated statutory references are to this code.)  In 2022, Seidel filed a resentencing petition under section 1172.6.  The trial court denied the petition without issuing an order to show cause.

Felony-murder was the only theory of murder on which Seidel's jury was instructed.  The question presented in this appeal is whether the jury's true finding on the lying-in-wait special circumstance precludes Seidel from making a prima facie showing of eligibility for relief under section 1172.6.[1]

Seidel contends that it does not.  He points out that in finding the lying-in-wait special circumstance true, the jury found only that, with the intent to kill, he "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted *any actor* in the commission of the murder in the first degree."  (Italics added.)  That finding, he argues, does not meet the requirement under current law that, with the intent to kill, he "aided, abetted, counseled, commanded, induced, solicited, requested, or assisted *the actual killer*

---

[1]     Because Seidel was convicted long before the Supreme Court's decisions in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522, the jury's true findings on the felony-murder special circumstances do not preclude him from making a prima facie showing.  (*People v. Strong* (2022) 13 Cal.5th 698, 703.)

1

in the commission of murder in the first degree." (§ 189, subd. (e)(2) (§ 189(e)(2)).) (Italics added.)

In my view, Seidel's argument is different from the argument rejected by this court in *People v. Lopez* (2023) 88 Cal.App.5th 566 (*Lopez*).  The defendant in that case argued that because section 189(e)(2) requires that a defendant aid "the commission of murder in the first degree," a felony-murder defendant must perform "an act that assists the killing itself, not just the underlying felony." (*Lopez*, *supra*, at p. 577.)  We disagreed.  (*Ibid.*)  We noted that in *People v. Dickey* (2005) 35 Cal.4th 884 the Supreme Court rejected the same argument with respect to the felony-murder special circumstances, holding that the requirement that the defendant aid "the commission of murder in the first degree" (§ 190.2, subd. (c)) does not mean that the defendant must aid "'the act of killing itself, rather than just the underlying felony.'" (*Lopez*, at pp. 577-578.)  Rather, the felony-murder special circumstances require only that the defendant aid "a qualifying felony in which a death occurs." (*Id.* at p. 578.)  We concluded that the parallel requirement in section 189(e)(2)—that the defendant must aid "the commission of murder in the first degree"—must be interpreted the same way.  (*Lopez*, at p. 578.)

Seidel's argument is consistent with our holding in *Lopez*.  Under *Lopez*, section 189(e)(2) requires that the defendant aid the underlying felony in which a death occurred; it does not require that the defendant aid the killing act itself.  (*Lopez*, *supra*, 88 Cal.App.5th at pp. 577-578.)  Seidel's argument is that the lying-in-wait special circumstance required only that he aid *any actor* in committing the underlying felony in

2

which a death occurred, which does not satisfy section 189(e)(2)'s requirement that he aid *the actual killer* in committing the underlying felony in which a death occurred. Unlike the defendant in *Lopez*, Seidel is not arguing that section 189(e)(2) requires that he aid the act of killing. Rather, consistent with *Lopez*, he is arguing that section 189(e)(2) requires that he aid the actual killer in committing the underlying felony in which a death occurred. And he argues that the jury made no such finding, because the lying-in-wait special circumstance required only that he aid *any actor*, not that he aid *the actual killer*.

If section 189(e)(2) required the same mens rea as direct aiding and abetting, then Seidel's argument would, in my view, be meritorious. For a defendant to be a direct aider and abettor of a particular perpetrator, the defendant must know of and share the criminal intent of that perpetrator. (See, e.g., *People v. Beeman* (1984) 35 Cal.3d 547, 560 [a direct aider and abettor must "act with knowledge of the criminal purpose of the perpetrator" and act "with the intent or purpose of facilitating the perpetrator's commission of the crime"]; *In re Lopez* (2023) 14 Cal.5th 562, 587-588; CALCRIM No. 401 [defining aiding and abetting as requiring that "[t]he defendant knew that the perpetrator intended to commit the crime" and "intended to aid and abet the perpetrator in committing the crime"].) Consequently, a defendant could be a direct aider and abettor of *one* participant in a felony without being a direct aider and abettor of *all* participants in the same felony.

3

For example, suppose that a defendant gives a gun to a confederate intending for the confederate to use it in a robbery, but the defendant does not otherwise participate in (and is not even present at) the robbery. If the confederate, acting without the defendant's knowledge, enlists a third party to participate in the robbery, then the defendant has aided and abetted the confederate in the robbery but has not aided and abetted the third party—the defendant knows nothing of the third party and hence knows nothing of the third party's criminal intent. If the third party kills someone in the course of the robbery, then the hypothetical would seem to show that Seidel's argument is sound: The defendant directly aided and abetted "any actor" in the commission of the felony in which a death occurred (§ 190.2, subd. (c)), but the defendant did not directly aid and abet "the actual killer" in the commission of the felony in which a death occurred (§ 189(e)(2)).

But Seidel's argument is unsound, because section 189(e)(2) does not require the same mens rea as direct aiding and abetting. Rather, although the actus reus of section 189(e)(2) is the same as the actus reus of direct aiding and abetting, the only mens rea requirement in section 189(e)(2) is "the intent to kill." That is, for a defendant to meet the requirements of section 189(e)(2), the defendant must (1) intend to kill, and (2) do something that aids, facilitates, encourages, or instigates the actual killer's commission of a qualifying felony in which a death occurs. (See CALCRIM No. 401 [defining aiding and abetting].)

4

The same hypothetical can be used to illustrate why Seidel's argument fails. The defendant, with the intent to kill, gives a gun to a confederate to use in a robbery, but the defendant does not participate further. Unbeknownst to the defendant, the confederate enlists a third party to participate in the robbery, and the third party kills someone in the course of the robbery. Even though the defendant knew nothing of the third party, the defendant satisfies the requirements of section 189(e)(2): (1) The defendant had the intent to kill, and (2) by giving the gun to the confederate, the defendant assisted the actual killer (i.e., the third party) in committing the robbery in which the death occurred. More generally, if a defendant does something that assists *at least one* participant in committing a felony, then the defendant's conduct assists *all* participants in committing that felony. Therefore, if the actual killer was a participant in the felony, then the defendant's conduct has assisted the actual killer in committing the felony.

For all of the foregoing reasons, I conclude that the true finding on the lying-in-wait special circumstance precludes Seidel from making a prima facie showing of eligibility for relief under section 1172.6. I therefore concur in the judgment.


MENETREZ
J.


5